We'll now hear argument in United States v. Dykes. Why don't you wait for a minute until the courtroom is clear. Please. I think we're good to go. So good morning. My name is Jeff Bagley. I'm here on behalf of defendant appellate Kenneth Dykes. May it please the court. So the magic number in this case is five. So that's the number of times the government breaches the plea agreement in this case. We start out, breach number one happens, PSR comes back, it's scored that Mr. Dykes is a career offender. Government submits a statement with respect to sentencing factors. It agrees with the pre-sentence report that he's a career offender. Not what's in the plea agreement. So that's breach number one. What about Ms. Kubiak's concession? The bottom line, Judge, with that is I know the government is not advocating for a career offender enhancement. So that comes much later in the case after this case has been briefed and argued before the district court on a number of occasions. How does that help you? They did it five times. But after the fifth time, she says that? I don't think you can read that statement literally. I think what she's trying to get out is the fact that it doesn't matter that they're saying that they're abiding by the plea agreement. What they're saying, if this court, and she goes on to say, if this court's going to find that he's a career offender, that bank robbery is a crime of violence. But isn't the dividing line here advocacy by the government for something that's in violation of the plea agreement, isn't that the line that's been drawn? I don't think so, Your Honor. I think the line is what the government promises in the plea agreement, and that's a range that's no higher than 125 months, 100 to 125 months. And what they are actually saying to the court on a number of occasions, which is, more or less, Mr. Dykes is a career offender. Someone in Mr. Dykes' exact position with two bank robberies. They never said he was a career offender. They said these were crimes of violence, because bank, that's a big issue all around the country on what's a crime of violence, and they didn't want to be hamstrung in other cases by conceding that bank robbery is not a crime of violence. Don't they, under Lawler, don't they have to affirmatively argue something that contravenes the plea agreement? So that's what they say they're doing, is they're protecting their interest in future cases. Did they once say he's a career offender? Well, they said that somebody, no, they didn't. What they said is somebody in Mr. Dykes' position with his two prior bank robbery convictions and his current bank robbery convictions is a career offender. So I don't think it should be lost on anybody, and I don't think it was lost on the district court that what they're really saying is that Mr. Dykes is a career offender. Do they come out and say it? No, of course not, because that would be a blatant violation of the plea agreement. And I think that's what's particularly troubling here, is the lengths that they go to to try to hide the ball. They say on a number of occasions, well, we're Lawler here, we can't abide by the plea agreement. But didn't the district court ask both sides to brief the issue of whether bank robbery is a crime of violence? It did, but only after it was brought to the attention of the district court by the government. So the government agrees with the PSR. Then it comes in on the very day of sentencing, and breach number two is the very day of sentencing in April of 2016. And the government comes in, Mr. Dykes is prepared to be sentenced. His reasonable expectations in the plea agreement, and of course that's what we're talking about here when we're talking about plea agreements, reasonable expectations of the parties. His reasonable expectation is, I'm looking at a range on the low end of 77 to 96 months, or I'm looking at the very high end at 125 months. And the government comes in on that day in April of 2016 and says to the court, judge, we can't go forward today. But hadn't you objected in March to the PSR, arguing that the federal bank robbery didn't constitute a crime of violence? Hadn't that issue been raised? Yes, but the issue was initially raised, of course, by the pre-sentence investigation report. Yeah, but that still made it an issue. Did you expect the government then to remain silent on that point? Exactly, yes. That's their obligation under the plea agreement. If they didn't think Mr. Dykes was a career offender, they shouldn't have bargained for that. And we're not at a level playing field. They shouldn't have put that in the plea agreement. They shouldn't have agreed that his range is 100 to 125. But they didn't know about the second prior bank robbery attack. Well, they admit in district court that they did know about it. They know that we either knew or should have known is what the supervisor from the U.S. Attorney's Office says, and that's in the record. It's also the case that your client knew about the two prior bank robberies, right? Assumably, yes, my client did know about them, but, I mean, that's not the bargain he struck, and we have to look at the bargain that was struck. But the plea agreement specifically said the court's not bound by that, right? The court, of course, is not bound by it, but as this court has said on a number of occasions, that's an important factor, but not the most important factor. The most important factor is looking to preserve the integrity of the judicial system, looking to preserve the integrity of the plea bargaining that happens, holding the government's feet to the fire, so to speak, when it makes an agreement. I take it there's a kind of a low-balling problem here, the problem of the government entering into a plea agreement which is low and lower than the PSR is going to say or has said, and the government enters into that knowing full well that later on it's going to say, well, we're not advocating for a higher one, but a higher one is applicable. I think that's precisely the problem, and not only did they say to the district court, on one hand, paying lip service to the fact that we're abiding by the plea agreement and then going and saying that somebody in Mr. Dykes' . . . The question, I suppose, is how do the courts assure themselves that that is not what's happening? Is there a way? That what is not happening? I'm sorry. Low-balling, going low, and then with the full knowledge or expectation that later on they'll say, oh, we're not advocating, but it's higher. Yeah, I think . . . look, the government made a mistake, I think, is what happened. I don't think it was an intentional . . . That is, supposing you lose, what is to prevent the next case, the prosecution coming in and saying, we have a great deal for you. Okay, here it is, and with a relatively modest sentence, and then later on in the proceedings, for whatever reason, they say, well, yeah, the PSR is right. Perhaps it's right, but we can't advocate for it, even though we say they're right. I think Lawler addresses that. I think Lawler says that they have to stand silent. And Lawler says, at a minimum, they have to stand silent. So, we're not asking . . . But Amico gives somewhat greater latitude, doesn't it? Amico allows the government to respond if it reserves the right in the plea agreement. All through the briefing, they talk about the nature and circumstances of the offense the government does, and they claim that that's the ability to respond, and that's where the plea agreement . . . But, as I point out in my papers, that's kind of a factual distinction. There's no factual problems here. We're not arguing that Mr. Dykes didn't rob two banks, right, or that the manner in which those banks were robbed. This isn't a fact. The nature and circumstances of the case are about facts. This isn't about facts. This is about taking Mr. Dykes from 77 months on the low end, all the way to 188 months on the high end. That's almost 10 years in jail, and that's a difference that the government shouldn't be able to effectuate after it's already bargained for something else. You want to take a minute to address your argument that 2113A includes offenses that are not crimes of violence? Sure, Your Honor. Thank you. If the government . . . I'm sorry, if this court agrees with Mr. Dykes that the case should be remanded in front of a different district judge, obviously this court doesn't have to address that issue. There may be a reason to remand it right there. But, I do point out . . . So, Beckles came down in the interim between briefing and today. Beckles held that the due process . . . you can't make a due process clause violation argument when it comes to the guidelines. So, but what it didn't hold is that the residual clause of the career offender guideline is anything but clear, right? I mean, it's . . . and this is from the Supreme . . . Isn't this an elements clause case? Correct, yes. Why are you arguing a residual clause? Well, if the residual clause is gone, you have to go to the force clause or the elements clause. So, we're arguing that the residual clause is still gone, even after Beckles. Maybe it is, but what about the elements clause? Doesn't bank robbery have an element of violence? I submit that it does not. Bank robbery doesn't? What's that? Bank robbery doesn't? Correct, correct. It can be . . . So, you have to . . . In order to fall under the elements clause, there has to be violent, physical force against the person of another. Bank robbery can be committed without violent, physical force. The best example, I think, is Carter, as I point out in my papers, where the defendant pushed a bystander, hurtled the bank counter, grabbed some money, and took off. There's no violent, physical force. A push is not violent, physical force. The Supreme Court said that maybe a slap is violent, physical force, but a push isn't. So, bank robbery can be committed without violent, physical force. Therefore, it doesn't fit under the force clause because, obviously, you have to look at the lowest common denominator. Thank you very much. You have two minutes for rebuttal. We'll hear from the government. May it please the Court?  I'm taking your time. I'm just . . . easier to do it now. If you could respond to the low-balling question that I asked, I won't ask it again. Sure. And, Judge, I think this Court's held on a couple of different occasions that these are very contextual determinations, that looking at the record is an important part of determining what conduct happened. And I know here, Mr. Dykes has said that this was unvarnished advocacy and a troubling artifice, but the record just doesn't support that for a few reasons. And I think when you look at the record, you can see that that's just not what we had here. First and foremost, and I think there's three reasons why. First, the record does show that there was a limited but significant reason, in this case, why the government was making a legal argument, as it did, that bank robbery was a crime of violence. And specifically, that was to protect the government's interest on future cases. And we noted that on multiple occasions. Why was that really necessary? I mean, couldn't you reserve your rights and say we're remaining silent here because of our plea agreement? But we obviously . . . I mean, how would you be bound in the future by having done that in the context of a plea agreement? I think this is in part, and I know Your Honors are aware of all the different districts in the Second Circuit. In part, in the Western District of New York, we're a smaller district. When one district judge rules in a particular way, the other judges take heed of that. This was a very hotly contested area of the law that even the defense acknowledges in their brief on a couple of occasions, on page 20 and 21 of the brief, that it was a nascent area of the law that may continue to develop. And that was a statement that was made well after the argument was taking place in the district court, that what constituted a crime of violence was significant in the wake of the second Johnson decision. And the government needed to cement its position as to what was and was not a crime of violence. It's a very nice place to cement it when you have forsworn taking a position, basically, in the context of the plea agreement. Well, so what I would say is I disagree with what Mr. Dykes has stated on a couple of occasions, both here today and in his written submissions, that Lawler requires silence, particularly silence on purely legal matters. I think that distinction was laid out pretty clearly in Riera and the third footnote, and again in Amico, where the court indicated, specifically pointing to Amico, that where the government is responding to a legal argument made by the defense in order to fill in gaps, as long as the government prefaces that that argument wasn't intended to apply in the instant case, that was a distinguishing factor the court found significant, and I think that's exactly what we have here. I was struck by the fact that you all asked for a 30-day adjournment to address this issue when you were, you know, had committed not to advocating for the application of the enhancement. Yes, and I'm sorry. That's all right. The record actually shows at that point that the government did not ask for a 30-day adjournment to address this issue. It clearly shows that the government asked for a 30-day adjournment to see whether or not we could address that issue, and that, again, shows the record back to your original question that the government was very cognizant of its obligations under Lawler and was asking for an opportunity to explore what we could and could not do under Lawler. So if we—I'm sorry. I should have let you. Oh, no, not at all. So if we decide this case in favor of your position, we should be very specific, make clear that what we're talking about is the specific facts of this case and to warn people not to forget. I know it's a summary order, and it's not precedential, and everybody reads it, and everybody argues it, and they say it's not precedential. I'm aware of that. But we should be specific, then, that it's this case that we're talking about, and one must be careful to apply it to the next one. Well, I do think the Court's been careful like that in all of the decisions since Lawler. I think that it's gone through great lengths. You look at the Griffin decision and the length at which the record was examined. I think that is just how these issues have been approached by the Court. But I also do think that there has never been a rule, neither from Lawler on, that the government is obligated to absolute silence on purely legal matters so long as that preface, that it doesn't apply here, exists. And I think the record shows, in Amico, the Court found it significant that the government repeated, I think it was four to five times in a single brief, that they did not think that their argument should apply in the instant case. But here we have more than that. Even though we don't have an individual brief where there were four to five times, there were occasions, and you can see them on the record at A114, A123, A139, A140, A156, A158, where the government made as clear as possible that it was not advocating that Mr. Dykes be sentenced as a career offender. And the government at no point advocated that Mr. Dykes be sentenced as a career offender. Now, as a distinguishing factor, there was an argument that was made by defense counsel in an April 4th memo that argued, and this was at A103 to A105, that said even if the court found that bank robbery was a crime of violence, that Mr. Dykes should still not be sentenced as a career offender. I think everybody would agree that if the government had responded to that, that would have been a problem. That would have been applying it to this case. But as this Court's repeated over and over, the government has a decisive role in sentencing. That's way back from even Lawler. The government and the defense are standing here in the district court saying, do not sentence Mr. Dykes as a career offender. The guidelines are advisory. There's just not much else we can do while also simultaneously protecting a legal position that's not about Mr. Dykes at all. Your Honor, just to address briefly two other points, the remedy that was raised in the papers, we'll just note that Mr. Dykes is requesting that there be some sort of maximum imposed on any remedy if the court was to rule against us. And we would just note a concern that that would essentially require a judge to ignore 3553A. There's no legal basis for that sort of remedy. So just briefly note that. And then to address the crime of violence issue, the government's asking the court to follow every other circuit that's addressed this issue and rule that the district court did not err in ruling that bank robberies are crime of violence under 4B1.2. There's multiple avenues, as Mr. Dykes has said and as the court acknowledged, both the primary one that's been briefed and argued is the force clause under 4B1.2, but also as we noted in a footnote in our brief, the risk of force or the residual clause and the enumerated crimes both also provide avenues for finding that bank robberies are crime of violence. And not only every other circuit that's addressed this issue, but also the several of the arguments that were put forth by Mr. Dykes were also addressed. But the residual clause at the time of these guidelines, I think it was the 2015 guidelines that applied, had the old language that was then modified, right, to specifically say bank robberies were one of the enumerated offenses. Am I right about that chronology? Yes. There was certainly a modification after this argument had occurred, right? So the guidelines were different then. Absolutely. So was your argument then under the pre-amended residual clause, it would still be a crime of violence? Yes. I was simply referring to what existed at the time. Yes. Several of the arguments that were also put forth by Mr. Dykes I think were also addressed in this Court's decision in U.S. v. Hill. Although that was about a Hobbs Act robbery, it does address a number of the situations that were raised here, including Mr. Dykes' analysis of Trzanski excuse me if I mispronounced that name, and also the various hypotheticals that were raised by Mr. Dykes in this case. And that's just that both the nature of the hypotheticals, Hill stated that it must be a realistic probability, not a theoretical possibility, that the statute at issue could be applied to conduct that does not constitute a crime of violence. And not only did the Court in Hill address similar hypotheticals and find that they were sufficient, and that's under that statute under the Hobbs Act robbery, but also those examples that were based on cases like Carter that was referenced by Mr. Dykes, those certainly would be sufficient to find that this was still a threat of force, which I think the threat was often ignored in Mr. Dykes' papers. If there's no further questions? Thank you, Your Honors. Thank you very much. Mr. Bagley, you have two minutes. If I could begin by just addressing the last point first. Trzanski, I think, is still a good law. Hill talks about, Hill relies on Castleman. There's a footnote in Castleman, which is the Supreme Court case, that says it would be, essentially it would be a bad idea to apply this case to the ACCA context. Obviously we're in a guideline world here, but it's the same kind of, it's the same language. So in that sense, Trzanski, I think, should control and not Hill. To the more important point, though, I think we were never asking the government to agree that Mr. Dykes was a career offender, was not a career offender, excuse me. All we were asking the government to do was to say, was to be quiet on the issue, and it didn't do that. It argued time and time again that somebody in Mr. Dykes' position, and the government points out that it's saying over and over again that we're not advocating for anything that's not in the plea agreement. Well, I submit that the actions speak louder than the words here. And when you say that somebody in Mr. Dykes' precise position, with his two prior bank robberies and his current bank robbery, would be a career offender, then what you really are arguing is that Mr. Dykes is a career offender. You're kind of saying that the words speak louder than the words. Exactly. Yes. The words that they really mean are much stronger than it's . . . You know, this court has talked about formal disclaimers are not enough if the reasonable intentions are to influence the district court. And one last point. An issue here, the main issue here is the response. Are they allowed to respond or not respond? This is more than a response. Because what they did, at one point, it's the fifth violation that I talk about, a supervisor from the U.S. Attorney's Office came in, and not only did he continue to argue that, you know, bank robbery is a crime of violence, but he told the district court, we made a mistake. We made a mistake in this case. And so it leaves the impression with the district court that had the government had its druthers, we really wouldn't be arguing for this 100 to 125 range. We really would be up in this 151 to 188 range. And that's a stain that can't be removed. Thank you. Thank you very much. We'll reserve decision.